IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL LEE SANDIFER, | § § § | |
| Petitioner, | § § | |
| v. | § § | CIVIL ACTION No. H-14-0688 |
| WILLIAM STEPHENS, | § § § | |
| Respondent. | § § | |

**MEMORANDUM OPINION AND ORDER**

State inmate Daniel Lee Sandifer filed a *pro se* section 2254 habeas petition challenging his conviction for aggravated sexual assault of a child. Respondent filed a motion for summary judgment on October 16, 2014 (Docket Entry No. 15), and served petitioner a copy at his address of record on that same date. To-date, and despite expiration of a reasonable period of time in excess of eight months, petitioner has failed to respond to the motion, and the motion is uncontested.

Based on consideration of the pleadings, the motion, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment, **DENIES** habeas relief, and **DISMISSES** this lawsuit for the reasons that follow.

**I. PROCEDURAL BACKGROUND**

Petitioner was convicted of aggravated sexual assault of a child and sentenced to twenty years' incarceration in 2008. The conviction was affirmed on appeal, and the Texas Court of Criminal Appeals refused discretionary review. *Sandifer v. State*, No.

01-08-00625-CR, 2010 WL 670545 (Tex. App. – Houston [1st Dist.] 2010, pet. ref'd). Petitioner's application for state habeas relief was denied.

Petitioner raises the following grounds for habeas relief in the instant petition:

1. Trial counsel was ineffective in:

    (a) failing to call defense witnesses during punishment;

    (b) failing to investigate and prepare for trial; and

    (c) providing an untimely affidavit in the state habeas proceedings.

2. Delays in the state habeas proceedings violated his due process rights.

3. The evidence is insufficient to support his conviction.

4. The prosecution used improper extraneous offense evidence during the punishment phase of trial.

Respondent argues that these grounds have no merit and that habeas relief should be summarily denied.

## II. FACTUAL BACKGROUND

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction:

> The complainant, C.M., was best friends with T.F., who is Sandifer's stepdaughter. C.M. visited T.F.'s house often, and Sandifer was usually there. C.M. testified that she felt uncomfortable around Sandifer. As examples, C.M. testified that Sandifer insisted that she call him 'Mr. Master, the Magnificent,' that he would spank her, and he would pretend that he was going to pull her pants down.
>
> Sandifer worked at Wal-Mart and sometimes took T.F. and C.M. to work with him. C.M. testified that in September 2004 when they accompanied Sandifer

to work, he 'turned around and he pulled his pants down and he told us to touch it.' C.M. said that Sandifer's penis was erect, and that she told him 'no' and screamed. After that incident, T.F. asked C.M. to promise not to say anything.

C.M. testified that in October 2004 she was playing at T.F.'s house and Sandifer asked her to come into his bedroom. Sandifer asked C.M. to give him a hug, and when she did, Sandifer pulled her into his bed and '[h]e put his legs on top of my legs and then he reached down my shorts, the back of my shorts and reached up and put his finger in my vagina.' After C.M. ran away to T.F.'s bedroom, C.M. testified that Sandifer wrote a note and 'slipped it under the door saying that [T.F.'s mother] doesn't give him any and we're the closest thing he has to a pro – to a whore.' T.F. showed the note to her mother, who burned it.

On cross-examination, C.M. stated that she was close to T.F., and C.M. admitted she 'would do pretty much anything [T.F.] asked [her] to do.' C.M. testified that the police learned about the incidents at the same time that T.F. moved away from her mother and Sandifer to live with T.F.'s biological father. T.F. was getting disciplined by her mother and Sandifer, and T.F. wanted to go live with her biological father.

Pasadena Police Department Detective T. Brinson testified that he contacted C.M.'s mother in March 2005 and told her that allegations had been made that C.M. was a victim of sexual abuse. C.M.'s mother brought C.M. to the Children's Assessment Center to be interviewed by a forensic specialist. Detective Brinson watched the interview of C.M. by closed circuit television, and after hearing C.M. tell her story, Detective Brinson identified Sandifer as a suspect and contacted him. Sandifer denied C.M.'s allegations of sexual abuse, but he became nervous when Detective Brinson asked him about a letter he had written. Sandifer admitted that he wrote a letter 'about being sexually frustrated and that in the letter he said the [T.F's mother] would not give him any and that he did not want to go to a whore to have sex.'

While C.M.'s mother was bringing C.M. to the Children's Assessment Center, C.M. told her mother what Sandifer had done at Wal-Mart and in Sandifer's bedroom. C.M. related the same events to the forensic interviewer and to a police officer. C.M. was also examined by Dr. M. Lyn, who found nothing unusual in her medical examination of C.M. C.M. told Dr. Lyn during the exam that Sandifer touched her in inappropriate ways. Dr. Lyn testified that

3

the lack of any physical injury to C.M. at the time of the medical examination, which was several months after C.M. claimed Sandifer sexually assaulted her, was not inconsistent with C.M.'s story.

Sandifer testified during the guilt-innocence phase of his trial. In discussing the Wal-Mart incident, Sandifer stated that T.F. 'ran up behind me . . . and just literally jerked on my shorts.' Sandifer testified that even after he pulled up his shorts, T.F. tried to pull them down again and that C.M. watched the whole incident and laughed.

Sandifer said that T.F. and C.M. were often mad at him because he disciplined them. Sandifer described an incident in which he was driving with C.M., T.F., and T.F.'s boyfriend, Chris, in the car. Sandifer said that C.M. became jealous of T.F. and Chris hugging, and C.M. reacted inappropriately:

> She literally grabbed my hand and pulled it down to her leg and said, 'See, see how soft.' You know, and you know, naturally, I'm trying to jerk back my hand. I did jerk my hand back. And then she put her arm around me while I'm driving, trying to put her arm around me and said, 'This is my boyfriend.' I mean, she was just literally mad because of Chris.

Sandifer testified that C.M. and T.F. 'clowned around' another time by playing a trick on him in his bedroom:

> [T.F.] came into the living room where I was watching T.V. and said, '[C.M.] needs you. She wants to talk to you.' So I walked into the – the bed is right there, the door is right there (indicating). I walked through the door next to the bed and I said, 'What's wrong,' you know. [T.F.] came up behind me and just literally shoved me down on [C.M.]. Okay. And [C.M.], she just wraps her legs around me and starts you know, around my neck and holding me down. And, you know, I got away, but it was just – you know, I couldn't take it. I didn't – you know, I didn't know what to think about it. But she wanted to go get ice cream. That was all. They wanted to go get ice cream.

Sandifer told C.M. and T.F. that this was inappropriate behavior. Sandifer explained the letter he wrote to C.M. and T.F. by saying that T.F. had told him that T.F.'s mother had cheated on him during a vacation to California. He said

4

that T.F. began asking him about 'hookers' and placing notes under his door. He denied that he had sex with a prostitute, but he said that he wrote the note '[t]o get them off my back, to just leave me alone.'

John Sandifer, the appellant's older brother, testified that C.M., T.F., and appellant attended a birthday party at his house. At the party, C.M. and T.F. were in a van with some older boys. After John's wife noticed the smell of marijuana coming from the van, John told the two girls to get out of the van. When C.M. and T.F. refused, John told his brother, who made the girls get out of the van. John testified that C.M. and T.F. were angry about the incident.

*Sandifer*, slip op. at 2–6.

### III. THE APPLICABLE LEGAL STANDARDS

A. Habeas Review

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying

6

factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B. <u>Summary Judgment</u>

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

The Supreme Court recently emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's limitations:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101 (quotation omitted).

In responding to petitioner's allegations of ineffective assistance, trial counsel submitted an affidavit on state collateral review in which he testified as follows:

9

The case was actually tried twice to a jury. The first trial, which occurred in 2006, ended in a mistrial after the State introduced evidence that [petitioner] was asked to take a polygraph test. Prior to that trial, the state gave me full access to the police offense reports and I was allowed to view the videotaped statements that both girls gave to investigators. In addition, since the first trial had ended in a mistrial, I had access to the testimony that [C.M.] had given at that trial.

The only trial strategy that was involved was to try to undermine the testimony of the complainant to establish that she was fabricating and to raise a reasonable doubt as to [petitioner's] guilt. Since there were no witnesses to the assault the case boiled down to the credibility of the complainant as opposed to that of [petitioner]. The complainant was a good witness and broke into tears at one point.

I met with [petitioner] numerous times during our court settings since he was out on bail, and met with him in my office several times to go over his version of the facts. In addition, I had already prepared and been to trial once so I was more than familiar with the facts. In addition I spoke with [petitioner] by telephone several times.

[Petitioner] was aware we were going to trial when we did because he signed a reset form indicating such as the setting prior to trial and I informed him as well.

In my opinion there was no defensive evidence available that was not introduced at trial. [Petitioner] gave his version of the facts and the complainant gave hers. The assault against [C.M.] occurred in a bedroom and no other witnesses were present at the time, or indeed in the house if I recall. The medical personnel testified that there were no objective medical indications that a sexual assault had occurred.

There were no additional motions that needed to be filed since I had received all of the discovery and the state's entire file.

I do not believe that there were any additional witnesses to be interviewed that would have been helpful or who had knowledge of the facts. The only possible one was [petitioner's] estranged wife[.] [Petitioner] kept telling me that she could provide evidence that the second complainant, his stepdaughter [T.], was constantly misbehaving, bringing boys into her room, disobeying her

mother and similar instances of misbehavior. Since [T.] was not the complainant in the trial case this evidence was irrelevant and probably would have been inadmissible anyway. [T.] testified at the punishment phase of the trial to an incident in which [petitioner] molested her and exposed himself to her and [C.M.] at the same time in a room at his workplace. [Petitioner] had told me that he had heard that [T.] had recanted this story (which she had originally given to the police). When she testified[,] she did not recant but in fact gave testimony consistent with her statement to the police.

*Ex parte Sandifer*, pp. 45–46.

In rejecting petitioner's claims for ineffective assistance of trial counsel, the state trial court on collateral review made the following relevant findings of fact:

1. The Court finds that the facts asserted in the affidavit of [trial counsel] are true and that the affidavit of [trial counsel] is credible and that [he] represented the applicant in connection with the primary case.

2. The Court finds based on the credible affidavit of [trial counsel] that [he] conducted an adequate investigation into the [petitioner's] defense. [Trial counsel] had full access to the police offense report and he was able to view the videotaped statements that the complainants' provided to investigators. Furthermore, [trial counsel] had access to prior testimony that one complainant, [C.M.], provided due to a mistrial occurring at the applicant's first trial. [Trial counsel] also met with the applicant numerous times both at [trial counsel's] office and during court settings.

3. The Court finds based on the affidavit of [trial counsel] that due to the nature of the offense that his defensive strategy was to try to undermine the testimony of the complainant to establish that she was fabricating and to raise a reasonable doubt as to the applicant's guilt.

\* \* \* \*

5. The Court finds based on the court reporter's record and the affidavit of [trial counsel] that [trial counsel] did call witnesses during the punishment phase of the applicant's trial.

11

*Ex parte Sandifer*, pp. 56–57. The trial court further made the following relevant conclusions of law:

1. The applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

2. The applicant fails to show what a more in-depth investigation would have revealed and how it would have benefitted the applicant's defense.

3. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Id.*, pp. 57–58 (citations omitted). The Texas Court of Criminal Appeals expressly relied on these findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner argues that trial counsel was ineffective in the following instances.

A. <u>Failing to call punishment witnesses</u>

Petitioner complains that trial counsel failed to call defense witnesses during the punishment hearing. He claims that counsel "was given a witness list that he failed to pay attention to. He did not call family of appellant for the punishment, as suggested if necessary. He did not call character witnesses on the list." (Docket Entry No. 1, p. 6.)

Complaints of uncalled witnesses are not favored in federal collateral review proceedings because allegations of what a witness would have testified are largely speculative and the presentation of testimonial evidence is a matter of trial strategy. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). A petitioner seeking to show ineffective

assistance of counsel for failure to call a witness must therefore "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Petitioner here does not meet this burden of proof. Petitioner does little more than name several witnesses he alleges his attorney failed to call or interview, and fails to provide affidavits or other probative proof to establish the content of the proposed witnesses' testimony and to establish their availability and willingness to testify. In absence of such evidence, petitioner's claim is conclusory and unsupported in the record.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

B.  <u>Failing to investigate and prepare for trial</u>

Petitioner next claims that counsel failed to investigate the case or prepare for trial. As with his first claim of ineffectiveness, petitioner presents only conclusory allegations, which are unsupported in the record and insufficient to warrant federal habeas relief.

A habeas petitioner alleging inadequate investigation must show specifically what additional investigation would have uncovered and how his defense would have thereby

benefitted. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993). Petitioner here fails to establish the specifics of any additional but omitted investigation or trial preparation or show how it would have benefitted his defense. His bare, conclusory assertions that additional investigation was necessary do not warrant federal habeas relief. *See Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

C. <u>Untimely affidavit</u>

Petitioner complains that trial counsel was ineffective in failing to submit his affidavit on collateral review in a timely manner. This claim provides petitioner no basis for federal habeas relied, as he enjoyed no right to counsel in his state habeas proceedings. *See Norris v. Wainwright*, 588 F.2d 130 (5th Cir. 1979). Even assuming such right were recognized, petitioner does not show that, but for counsel's failure to file the affidavit in a more timely

manner, there is a reasonable probability that the result of the proceeding would have been different.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## V.  STATE HABEAS DELAYS

Petitioner next claims that the State violated his due process rights by not responding within a reasonable time to various pleadings and orders during the state habeas proceedings. Petitioner's argument fails to raise an issue of constitutional dimension and is not a cognizable ground for federal habeas relief.

It is well established that infirmities in state habeas proceedings do not state a claim for federal habeas corpus relief. *Vail v. Procunier*, 747 F.2d 277 (5th Cir. 1984); *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999). An attack on a state habeas proceeding does not entitle a petitioner to habeas relief as to his conviction, as it is an attack on a proceeding collateral to the petitioner's confinement and not the confinement itself. *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995).

Petitioner is not entitled to federal habeas relief on this claim, and the claim is summarily dismissed.

## VI. INSUFFICIENCY OF THE EVIDENCE

Petitioner argues that the evidence is legally insufficient to support his conviction for aggravated sexual assault of a child.

In rejecting petitioner's challenge to the sufficiency of the evidence on direct appeal, the intermediate appellate court held as follows:

> In his first point of error, Sandifer contends the evidence is legally insufficient to establish that he committed aggravated sexual assault for the following reasons: (1) C.M. never told an adult that Sandifer assaulted her; (2) C.M. continued to return to Sandifer's house after the incident; (3) C.M. did not discuss the incident with three other children who were at the house at the time; (4) C.M. allowed Sandifer to take her places like Wal-Mart after the incident; (5) C.M.'s mother testified she had no reason to believe that Sandifer had done anything inappropriate with C.M.; (6) Detective Brinson never interviewed one of the other children who was at the house at the time of the incident; (7) Dr. Lyn testified there was a lack of any physical injury to C.M.; (8) 'Dr. Lyn' [sic] testimony proves that there was no specific timing of abuse of [C.M.]'; and (9) the State did not call T.F as a witness. The standard of review for legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*[.] The jury is the exclusive judge of the credibility of witnesses and of the weight of their testimony.
>
> Sandifer does not argue that the State has failed to adduce evidence of any element of the offense. Instead, Sandifer argues that '[d]ue to all the circumstances surrounding this case it is irrational that a jury could find appellant guilty when the complainant had many instances to inform someone that she had been sexually abused several times as she claims. She did not inform anyone of significance until she told her mother on February 28, 2005, four to five months after the alleged abuse.' Sandifer's argument is an attack on the weight and credibility of the evidence, which is a matter left exclusively to the jury. Accordingly, we hold there is legally sufficient evidence to support the judgment of conviction and overrule the first point of error.

*Sandifer*, slip op. at 3–4 (citations omitted).

In reviewing a claim of insufficient evidence, a federal habeas court must consider whether, viewing the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The state court on direct appeal applied this standard, and found the evidence sufficient to support petitioner's conviction. Petitioner's disagreement or dissatisfaction with the jury's verdict and with the state court's ruling on appeal provides him no basis for habeas relief before this Court. Moreover, this Court's independent review of the record reveals sufficient evidence under *Jackson* to support the jury's verdict, as shown by the evidence above.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## VII. EXTRANEOUS OFFENSE EVIDENCE

Petitioner argues that the prosecution used improper extraneous offense evidence during the punishment phase of trial. Specifically, he asserts that the State presented testimony from petitioner's stepdaughter that he had sexually assaulted her. He argues that the incident was inadmissible as it was not a final conviction.

Petitioner's claim has no merit. As correctly noted by the respondent, Texas law expressly allows the use of extraneous offense evidence during punishment, as long as it is relevant to sentencing. *See* TEX. CRIM. PRO. 37.07 § 3(a); *Huizar v. State*, 12 S.W.3d 479 (Tex. Crim. App. 2000). Petitioner fails to show that his stepdaughter's testimony was not relevant to his sentencing hearing, and fails to establish any impropriety by the State that can be addressed by this Court. No issue of a federal constitutional dimension is shown.

The state court determined that petitioner was not entitled to habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## VIII. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 15) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on JUL 0 2 2015.

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE